IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **Robert Benito Manzanares**, et al,<br><br>                           Plaintiff,<br>v.<br><br>**Attorney General Sean D. Reyes**, *Attorney General of the State of Utah,* et al<br><br>                           Defendants. | **REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS SHURTLEFF AND SWALLOW**<br><br>Case No.  2:14-cv-00040<br><br>District Judge David Nuffer<br>Magistrate Judge Evelyn J. Furse |

Plaintiffs Robert Benito Manzanares and "at least three hundred" other unmarried biological fathers and their minor children ("the Manzanares Plaintiffs") claim portions of the Utah Adoption Act, Utah Code Ann. §§ 78B-6-101 to 78B-6-146, unconstitutionally deprive them of fundamental rights and violate the Due Process Clause, the Equal Protection Clause, the protection against self-incrimination, and the Open Court's Provision of the Utah Constitution. (1st Am. Compl. 1, ¶¶ 54–64, ECF No. 35.)  The Manzanares Plaintiffs contend the Utah Adoption Act has created such a complex process for unwed fathers to preserve their interest in their children that it violates both the father's and the children's rights.  (1st Am. Compl. ¶ 54, ECF No. 35.)  Moreover, the Manzanares Plaintiffs allege that Utah Code section 78B-6-106 legalizes fraud and kidnapping, (1st Am. Compl. ¶ 55, ECF No. 35), because it requires the unwed father to comply strictly with all of the Act's requirements regardless of what the unwed mother or third parties may do or say.

The Manzanares Plaintiffs named the current Utah Attorney General, Sean D. Reyes and two former Utah Attorneys General, Mark L. Shurtleff and John E. Swallow, as Defendants in their official and personal capacities.  (1st Am. Compl. ¶ 48-50, ECF No. 35.)

Defendants Mark L. Shurtleff and John E. Swallow ("Mr. Shurtleff and Mr. Swallow") moved to dismiss the First Amended Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which the Court could grant relief. (Defs. Shurtleff & Swallow's Mot. to Dismiss & Supporting Mem. ("Mot. to Dismiss") ii–iv, ECF No. 38.)  Based on careful consideration of the parties' memoranda, the undersigned[1] RECOMMENDS the District Court GRANT the Motion to Dismiss claims against Mr. Shurtleff and Mr. Swallow WITH PREJUDICE because sovereign, absolute, and qualified immunity shield them both from suit in both their official and personal capacities.

Sovereign immunity and the Eleventh Amendment prohibit a claim for monetary damage against Mr. Shurtleff and Mr. Swallow in their official capacities.  Prosecutorial and legislative immunity prohibit any claims against Mr. Shurtleff and Mr. Swallow in their individual capacities for actions taken or omitted in their role as prosecutors or in their involvement in the legislative process.  As to the remaining allegations against Mr. Shurtleff and Mr. Swallow in their individual capacities, the constitutionality of parts of the Utah Adoption Act remains unclear at this time.  Absent clearly established law holding the Act unconstitutional, the Court cannot hold Mr. Shurtleff and Mr. Swallow personally liable for acts or omissions under the Act. Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the Court concludes it does not need oral argument and will make a recommendation on the Motion on the basis of the written memoranda.

---

[1] District Judge David Nuffer referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).  (ECF No. 15.)

## I. Motion to Dismiss Standard

To withstand a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), "a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "'a court must accept as true all of the allegations contained in a complaint,'" this rule does not apply to legal conclusions. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id.* (citation omitted). A complaint survives only if it "'states a plausible claim for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The Court sets forth the relevant facts as alleged in the Complaint.

## II. Factual Background

In their Complaint, nineteen named Plaintiffs[2] join Mr. Manzanares in bringing suit on behalf of themselves and their minor children. (1st Am. Compl. 1, ECF No. 35.) The Manzanares Plaintiffs are biological fathers of children adopted pursuant to the Utah Adoption Act and their minor children. (1st Am. Compl. ¶¶ 1–47, ECF No. 35; *see* Utah Code Ann. §§ 78B-6-101 to 78B-6-146.) The Manzanares Plaintiffs also note they expect to identify additional plaintiffs "through discovery and/or through the potential certification of this matter as a class." (1st Am. Compl. ¶ 47, ECF No. 35.)

The Manzanares Plaintiffs assert Mr. Shurtleff and Mr. Swallow failed "to correct the fraud and deception that has consequently led to the unlawful and unconstitutional removal of children from their biological families." (1st Am. Compl. ¶ 54, ECF No. 35.) The Manzanares

---

[2] Christopher David Thomas Carlton; Jake M. Strickland; Jacob D. Brooks; Frank L. Martin; Samuel G. Dye; Bobby L. Nevares; William E. Bolden; John M. Wyatt, III; Cody M. O'Dea; Scottie Wallace; Nikolaus L. Thurnwald; Terry J. Achane; Johnathon C. Crawford-Harris; Cody Fowler; Austin B. Knudson; Dallin Curry; C. Clint Worsley; Travis J. Anderson; Randy Cole; Mason Meederink; Gerald Lawson, Jr.; and Garrett Condos. (1st Am. Compl. 1, ECF No. 35.)

Plaintiffs claim "through the Utah Attorney General's affirmative actions and through gross inaction," the adoptions laws "have violated the fundamental civil rights of the Biological Fathers and their Minor Children. (*Id.* at ¶ 63.)

In support of their claims, the Manzanares Plaintiffs point to, among other details, public promises by Mr. Shurtleff and Mr. Swallow obligating them to take legislative action. Mr. Shurtleff, for instance, said in a Dateline television interview that he would "'look at [the issue] and talk to [the Utah] legislature about that." (1st Am. Compl. ¶ 480, ECF No. 35 (brackets in original).) Mr. Swallow "stated … that he was committed to keeping the Dateline promise of Shurtleff, and would assist with the eradication in Utah of adoptions sanctioned through fraudulent and other unconstitutional means." (*Id.* at ¶ 485.) The Manzanares Plaintiffs further take issue with Mr. Shurtleff and Mr. Swallow's failures to enter appearances in Utah cases challenging the Adoption Act or take any other action to signal the unconstitutionality of the Utah Adoption Act. (*Id*. at ¶ 478.)   Additionally, the Manzanares Plaintiffs decry the failure of the Attorneys General "to prosecute the illegal conduct of Utah adoption agencies; [the] failure to prosecute other parties engaging in or complicit with fraudulent adoption practices; and [the] failure to protect children from abusive adoption practices." (*Id*. at ¶ 495.)

In sum, the Manzanares Plaintiffs allege the Utah Adoption Act unconstitutionally deprives unwed biological fathers of parental rights and their minor children of their rights to a relationship with their biological fathers without the due process or equal protection guaranteed by the United States Constitution and in violation of the right against self-incrimination, the Utah open courts provision, and other constitutional provisions. (*Id*. at ¶¶ 54–64.) The Manzanares Plaintiffs further allege, Utah Code section 78B-6-106 "essentially legalizes and incentivizes biological mothers (and in many cases, lawyers and adoption agency representatives working

4

with them) to commit fraud against [b]iological [f]athers," (*id*. at ¶ 59), by stating "[a] fraudulent representation is not a defense to strict compliance with the requirements of this chapter, and is not a basis for dismissal of a petition for adoption, vacation of an adoption decree, or an automatic grant of custody to the offended party." Utah Code Ann. § 78B-6-106; (1st Am. Compl. ¶¶ 59-60.) Mr. Shurtleff and Mr. Swallow caused the Manzanares Plaintiffs' deprivation by "turn[ing] a blind eye to such practices, in direct contradiction to their personal promises, their oath of office, their statutory mandates, and their stated priorities, and also their oaths as licensed attorneys in Utah." (1st Am. Compl. ¶ 494, ECF No. 35.)

The Utah Legislature amended parts of the Utah Adoption Act in 2015. *See* Adoption Amendments, 2015 Utah Laws Ch. 194, S.B. 101. Because the Manzanares Plaintiffs' allegations against Mr. Shurtleff and Mr. Swallow relate to conduct under the statute before its modification, this Motion to Dismiss does not require the Court to consider the new legislation's impact on the Manzanares Plaintiffs' claims.

### III. Analysis.

The Manzanares Plaintiffs sue Mr. Shurtleff and Mr. Swallow in both their official and personal capacities. (1st Am. Compl. 1, ¶¶ 492–96, ECF No. 35.) In *Kentucky v. Graham*, the Supreme Court distinguished between the two types of suits in the context of damages actions:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

473 U.S. 159, 165-66 (1985) (footnote and citations omitted).

The requirements for plaintiffs to succeed in each type of suit vary considerably. On their merits, personal capacity suits must "show that the official, acting under color of state law, caused the deprivation of a federal right." *Id*. at 166 (citation omitted). An official capacity action requires a plaintiff establish the defendant entity "is a 'moving force' behind the deprivation," meaning that "the entity's 'policy or custom' must have played a part in the violation of federal law." *Id*. (citations omitted).

Different immunities apply to defendants in each type of action. A defendant in a personal capacity suit can assert "personal immunity defenses" such as absolute prosecutorial immunity, absolute legislative immunity, or qualified immunity. *Id.* at 166-67. Defendants in an official capacity suit may not avail themselves of these defenses. *Id.* Only forms of sovereign immunity, such as the Eleventh Amendment of the United States Constitution, provide defendants immunity in official capacity suits. *Id.*

The Complaint alleges violations of 42 U.S.C. §§ 1981, 1982, 1983, 1986, 1988, and seeks monetary, injunctive, and declaratory relief. (1st Am. Compl. ¶¶ 512-514, 516-518, ECF No. 35.) The undersigned will consider the Manzanares Plaintiffs' official and personal capacity claims in turn.

A. **Sovereign Immunity for Official Capacity Claims against Mr. Shurtleff and Mr. Swallow**

The Manzanares Plaintiffs seek monetary damages against Mr. Shurtleff and Mr. Swallow in their official capacities. (1st Am. Compl. 1, ¶ 513, ECF No. 35.)

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." *Id*. at 169 (citations omitted). Congress's passage of §§ 1981, 1982, 1983, and 1986 did not disturb the states' Eleventh

Amendment immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (acknowledging Congress did not abrogate Eleventh Amendment Immunity by enacting § 1983); *Ellis v. Univ. of Kan. Med. Center,* 163 F.3d 1186, 1196 & n.12 (10th Cir. 1999 ) (finding Congress did not abrogate Eleventh Amendment Immunity in enacting §§ 1981, 1983, or 1985, but acknowledging Congress did abrogate Eleventh Amendment Immunity in certain circumstances by enacting § 1988); *Powers v. CSX Transportation, Inc.,* 105 F. Supp. 2d 1295, 1303-04 (S.D. Ala. 2000) (finding § 1982 does not abrogate the Eleventh Amendment); *Alyshah v. Georgia,* 239 F. App'x 473, 473-74 (11th Cir. 2007) (dismissing § 1986 claim under Eleventh Amendment immunity); *see accord Inyo County v. Paiute-Shoshone Indians*, 538 U.S. 701, 708-711 (2003) (reaffirming *Will*); *Ross v. The Bd. of Regents*, 599 F.3d 1114, 1117 (10th Cir. 2010) (upholding dismissal of § 1983 damage claim for naming only state agencies and state employees in their official capacities). Concerns about infringing on states' sovereign immunity bar plaintiffs from seeking monetary damages in official capacity suits. *See Kentucky,* 473 U.S. at 169. The Manzanares Plaintiffs do not assert the State of Utah has waived its Eleventh Amendment immunity by statute. (Mem. in Opp'n to Def. Shurtleff & Swallow's Mot. to Dismiss ("Opp'n") 3, ECF No. 42.) Moreover, the Governmental Immunity Act of Utah explicitly states that Utah does not waive immunity of government officers, acting within their official capacities, for civil rights violations. Utah Code Ann. § 63G-7-201 (4)(b).

Because Utah has not waived its Eleventh Amendment immunity, and because sovereign immunity extends to actions against state officials in their official capacities, the undersigned RECOMMENDS the District Court dismiss the Manzanares Plaintiffs' claims for monetary damages against Mr. Shurtleff and Mr. Swallow in their official capacities with prejudice.

The Eleventh Amendment does not bar suits for prospective injunctive relief against individuals in their official capacities, because of the need to prevent continuing violations of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1986). The Complaint also seeks prospective injunctive relief. (1st Am. Compl. ¶¶ 516–518.) However, the Manzanares Plaintiffs admit that neither Mr. Shurtleff nor Mr. Swallow currently serve as Attorney General. (1st Am. Compl. 1, ¶¶ 49, 50, ECF No. 35.) Because neither Mr. Shurtleff nor Mr. Swallow currently holds office they cannot provide any prospective relief. Therefore any claim against Mr. Shurtleff and Mr. Swallow for prospective relief fails to state a claim upon which the Court can grant relief. For these reasons, the undersigned RECOMMENDS the District Court dismiss the official capacity claims for prospective relief against Mr. Shurtleff and Mr. Swallow with prejudice.

If the District Court dismisses the official capacity claims against Mr. Shurtleff and Mr. Swallow on all of these grounds, no basis will remain upon which the Court could grant relief under § 1988 on the official capacity claims. § 1988 permits recovery of attorney fees where a plaintiff prevails on an official capacity claim for prospective relief. *Ellis,* 163 F.3d at 1196 n.12. As no such claims could remain as to Mr. Shurtleff and Mr. Swallow, the undersigned RECOMMENDS the District Court dismiss the claim for relief against Mr. Shurtleff and Mr. Swallow in their official capacities under § 1988.

## B.  Individual Capacity

The Manzanares Plaintiffs also bring claims against Mr. Shurtleff and Mr. Swallow in their personal capacities. (1st Am. Compl. 1, ECF No. 35.) As noted above, defendants in personal capacity suits can raise prosecutorial, legislative, and qualified immunity. *Kentucky*, 473 U.S. at 166-67. Mr. Shurtleff and Mr. Swallow raise these defenses. (*See* Mot. to Dismiss 2–14, ECF No. 38.)

### 1. Absolute Prosecutorial Immunity

Mr. Shurtleff and Mr. Swallow assert absolute prosecutorial immunity undermines the Manzanares Plaintiffs' claims. (Mot. to Dismiss 3–4, ECF No. 38.)

"[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1195 (10th Cir. 2010) (brackets in original) (internal quotation marks omitted) (*quoting Spielman v. Hildebrand*, 873 F.2d 1377, 1381 (10th Cir. 1989); *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976)). The Tenth Circuit endorses a "functional approach to claims of absolute immunity," meaning the extension of absolute immunity depends not upon one's status or office, but rather on "whether the particular actions of the defendant are within the scope of the claimed immunity." *Jensen*, 603 F.3d at 1195.

"State attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings are absolutely immune from suit under section 1983 concerning activities intimately associated with the judicial process." *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (alterations and internal quotation marks omitted) (*quoting Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991)*; Imbler*, 424 U.S. at 430–31). The Court in *Scott* further developed the standard for determining when absolute immunity protects an official's behavior:

> Absolute immunity does not extend to actions that are primarily investigative or administrative in nature, though it may attach even to such administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court. In drawing this distinction, we are guided by the following principle: The more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach. Investigative acts that fall outside the scope of absolute immunity are accorded qualified immunity.

*Scott*, 216 F.3d at 908-09 (internal citations and quotation marks omitted).  In *Mink v. Suthers*, relied upon by the Manzanares Plaintiffs, the Tenth Circuit considered whether the official "w[ore] the hat of an advocate."  482 F.3d 1244, 1262 (10th Cir. 2007) (finding a deputy district attorney's review of the affidavit in support of the search warrant not prosecutorial in nature); *see also  Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (holding "the determinative factor is 'advocacy' because that is the prosecutor's main function" (citations omitted).)

Furthermore, courts must "heed the Supreme Court's admonition that absolute immunity is the exception and not the rule." *Gagan*, 35 F.3d at 1476 (*citing Burns v. Reed*, 500 U.S. 478, 485–86 (1991).)  The Supreme Court applies absolute prosecutorial immunity only when the challenged conduct is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430 (describing the history and rationale of prosecutorial immunity).  The Tenth Circuit has specifically held, "A decision not to prosecute is a decision which is protected by that immunity."  *Dohaish v. Tooley*, 670 F.2d 934, 938 (10th Cir. 1982).

The Manzanares Plaintiffs complain that Mr. Shurtleff and Mr. Swallow failed "to prosecute the illegal conduct of Utah adoption agencies; fail[ed] to prosecute other parties engaging in or complicit with fraudulent adoption practices; and [] fail[ed] to protect children from abusive adoption practices and prosecute those responsible for such practices."  (1st Am. Compl. ¶ 495, ECF No. 35.)  These allegations involve a prosecutorial determination not to pursue a criminal action.  Applying Tenth Circuit precedent, this Court finds the decisions of Mr. Shurtleff and Mr. Swallow not to initiate criminal proceedings intimately linked to "the judicial process and the initiation and presentation of the state's case." *Scott*, 216 F.3d at 908-09 (internal citations and quotation marks omitted).  Because Mr. Shurtleff and Mr. Swallow acted in their role as advocates for the state when deciding not to initiate criminal proceedings against

individuals and agencies operating pursuant to the Utah Adoption Act, absolute prosecutorial immunity bars the Manzanares Plaintiffs' claims for failure to prosecute. *See Dohaish*, 670 F.2d at 938.

The Manzanares Plaintiffs' argument that absolute prosecutorial immunity does not protect Mr. Shurtleff and Mr. Swallow fails. (*See* Mem. in Opp'n to Def. Shurtleff and Swallow's Mot. to Dismiss ("Pl.'s Br.") 2–8, ECF No. 42.) Although the Manzanares Plaintiffs direct the Court to several cases denying prosecutors the shield of absolute immunity, the facts in the cited cases all involve state prosecutors performing functions outside their prosecutorial duties. In *Kalina v. Fletcher*, for instance, the Supreme Court found a prosecutor "perform[ing] an act that any competent witness might have performed" by making false statements in an arrest warrant application not protected by prosecutorial immunity. 522 U.S. 118, 129–30 (1997). The court held testifying about facts fulfills the role of a witness, not a prosecutor. *Id.* at 130. Nevertheless, the U.S. Supreme Court in that same case found the prosecutor protected by absolute immunity for

> activities in connection with the preparation and filing of two of the three charging documents—the information and the motion for an arrest warrant…. Indeed, except for her act in personally attesting to the truth of the averments in the certification, it seems equally clear that the preparation and filing of the third document in the package was part of the advocate's function as well.

*Id.* at 129. *Dohaish*, 670 F.2d at 938, makes clear that Mr. Shurtleff's and Mr. Swallow's failures to prosecute particular persons and entities falls within the scope of advocacy.

For the reasons stated above, the Court RECOMMENDS the District Court find Mr. Shurtleff's and Mr. Swallow's failures not to initiate criminal proceedings protected by prosecutorial immunity and dismiss those claims with prejudice.

### 2. Absolute Legislative Immunity

Mr. Shurtleff and Mr. Swallow also seek the protection of absolute legislative immunity. (Mot. to Dismiss 4–5, ECF No. 38.)

"[S]tate and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Id.* at 54 (citation omitted). Absolute legislative immunity may protect non-legislative officials based "on the nature of the act, rather than on the motive or intent of the official performing." *Id.* (citation omitted).

When applied to United States Senators, for instance, "[a] legislative act has consistently been defined as an act generally done in Congress in relation to the business before it." *United States v. Brewster*, 408 U.S. 501, 512 (1972). In *Bogan*, the Court found a city council member and mayor who introduced and signed a bill terminating the plaintiff's employment protected by absolute immunity. *Bogan*, 523 U.S. at 55. Legislative immunity also protects state judges who promulgate lawyers' rules of professional responsibility because they act in a legislative capacity. *Sup. Ct. of Va. v. Consumers Union*, 446 U.S. 719, 734 (1980). Immunity extends so far as to protect legislators carrying out a legislative investigation. *Tenney v. Brandhove*, 341 U.S. 367, 377-78 (1951) ("Investigations, whether by standing or special committees, are an established part of representative government." (footnote omitted)).

The Manzanares Plaintiffs allege Mr. Shurtleff and Mr. Swallow violated the Manzanares Plaintiffs' civil rights by failing to support legislation amending the Utah Adoption Act. (1st Am. Compl. ¶¶ 480–491, ECF No. 35.) Specifically, the Manzanares Plaintiffs cite a "promise" given by Mr. Shurtleff in a television interview, later endorsed by Mr. Swallow, to "assist with

the eradication in Utah of [fraudulent] adoptions." (*Id.* at ¶¶ 480, 485). Mr. Shurtleff stated he would "'look at [the issue] and talk to [the Utah] legislature about that.'" (*Id.* at ¶ 480 (brackets in original)). The Complaint also describes the introduction in the Utah Legislature and eventual defeat of a bill "that would have required mandatory notice to unmarried biological fathers," as well as Mr. Swallow's alleged withdrawal of support because "a Democrat sponsor[ed] the bill." (*Id*. at ¶¶ 487, 489.)

The Court finds all these activities protected by absolute legislative immunity. Although the legislative power of Utah emanates from the Senate and House of Representatives, Utah Const. Art VI § 1, other Utah officials receive legislative immunity when they operate "in the sphere of legitimate legislative activity," *Bogan*, 523 U.S. at 54 (citation and quotation marks omitted). Legislative immunity protects Mr. Shurtleff's failure to deliver on his promise, because of its direct connection to the legislative process. Mr. Swallow's apparently shifting position on proposed legislation likewise relates to the business before the legislature.

Government officials' decisions to support—or oppose—bills pending before the Utah legislature reflects precisely the kind of legislative activity that immunity protects. Permitting citizens to sue Attorneys General for taking particular positions on legislative activity would undermine the legislature's effectiveness, interfere with constituents' democratic representation, and raise the specter of endlessly distracting litigation. *See Bogan*, 523 U.S. at 52. Although the Attorney General is not a legislator, and most of his official duties fall well outside the realm of legislative activity, as the "legal adviser of the State officers" he must remain free to weigh in on legislation without fear of litigation. *See* Utah Const. Art VI § 1 (legislative power); Art VII § 16 (duties of Attorney General).

For these reasons, the undersigned RECOMMENDS the District Court find Mr. Shurtleff's and Mr. Swallow's legislative activities protected by absolute legislative immunity and dismiss those claims with prejudice.

### 3. Qualified Immunity

Although prosecutorial and legislative immunity bar many of the Manzanares Plaintiffs' personal capacity claims, some of the Complaint's allegations fall outside the narrow limits of prosecutorial or legislative activity. (*See, e.g.* 1st Am. Compl. ¶¶ 475-78, 494, ECF No. 35.)

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To permit public officials "to avoid the burdens of such pretrial matters as discovery," courts must resolve the purely legal question of qualified immunity "at the earliest possible stage in litigation." *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001) (quotation marks and citations omitted); *accord Pearson*, 555 U.S. at 232. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

After a defendant raises a qualified immunity defense, a "heavy two-part burden" shifts to the plaintiff. *Gross*, 245 F.3d at 1155 (quotation marks and citations omitted). To determine whether qualified immunity applies, courts must determine "whether the facts that a plaintiff has alleged make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citations omitted). Courts may consider these prongs in either order. *Id.* at 236. "Qualified

immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id.* at 232.

Because Mr. Shurtleff and Mr. Swallow assert qualified immunity, (Mot. to Dismiss 6–14, ECF No. 38), the Manzanares Plaintiffs bear the burden of satisfying both of *Pearson*'s prongs. Assuming without deciding that the Utah Adoption Act violates the Manzanares Plaintiffs' constitutional rights,[3] those constitutional rights did not "qualify as clearly established" at the time of Mr. Shurtleff's and Mr. Swallow's alleged conduct.

The Supreme Court of Utah has generally upheld the Utah Adoption Act and its requirement of strict compliance with the filing procedures for unwed fathers. *In re Baby Girl T.*, 2012 UT 78, ¶ 25, 298 P.3d 1251 (collecting cases). In 2009, the Supreme Court of Utah upheld application of the Act to preclude an out-of-state father from challenging an adoption in Utah that the out-of-state mother had concealed— exactly the type of conduct of which the Manzanares Plaintiffs complain— where the father had not established his parental rights in his home state. *In re I.K.,* 2009 UT 70, ¶¶ 22-24, 220 P.3d 464. In 2012, the Supreme Court of Utah struck a portion of the Act because the "strict compliance standard poses an unacceptable risk of erroneous deprivation of unwed fathers' rights" where the inability to comply resulted from the "failures of state-controlled process." *Baby Girl T.*, 2012 UT 78 at ¶ 25. That same year the Supreme Court of Utah, without any discussion of constitutionality, found that a mother's concealment prevented a father from having knowledge that would obligate him to comply with the Act or lose his rights. *In re Adoption of Baby B.*, 2012 UT 35, ¶¶ 67, 71, 92, 308 P.3d 382. Currently, a petition for certiorari remains pending in the United States Supreme Court on *In re Adoption of J.S.*, 2014 UT 51, __P.3d__. *Boulden v. John Doe*, No. 14-1106. The

---

[3] Determination of this Motion to Dismiss does not require resolution of the question regarding the Utah Adoption Act's constitutionality. Therefore, the Court does not reach the question.

Supreme Court of Utah in *Adoption of J.S.* upheld the affidavit requirement of the Act finding it complied with substantive due process, equal protection, and the Utah Constitution's uniform operation of laws requirement. 2014 UT 51 at ¶ 18-19. The case law in this field makes clear that application of the statute is fact specific. Further, no case clearly establishes the unconstitutionality of the provisions of the Act to which the Manzanares Plaintiffs object.

"The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The assertion that Mr. Shurtleff and Mr. Swallow understood their lack of action violated a clearly established constitutional right has no support in the case law.

Because no cases make clear that the Utah Adoption Act violates the United States and/or Utah Constitutions in the way the Manzanares Plaintiffs assert, the undersigned RECOMMENDS the District Court find qualified immunity bars the Complaint's remaining claims against Mr. Shurtleff and Mr. Swallow and dismiss those claims with prejudice.

## IV. Conclusion

Based on the foregoing, the undersigned RECOMMENDS the District Court DISMISS all the Manzanares Plaintiffs' claims against Mr. Shurtleff and Mr. Swallow WITH PREJUDICE.

The court will send copies of this Report and Recommendation to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objection to this Report and Recommendation with the clerk of the court, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of receiving it. Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this _14th_ day of September, 2015.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge